Anthony and Helen V. Nahacky v. Commissioner.
Nahacky v. Commissioner
Docket No. 5192-65.
United States Tax Court
T.C. Memo 1967-128; 1967 Tax Ct. Memo LEXIS 133; 26 T.C.M. (CCH) 572; T.C.M. (RIA) 67128; June 8, 1967
*133 During the taxable year 1958, petitioners were employed by Pan American World Airways, Inc., Guided Missiles Range Division, in connection with the performance of its contract with the U.S. Air Force for the maintenance and operation of a down range missile-tracking station located on the island of Trinidad, where petitioners were stationed. The missile base was established by the Air Force pursuant to treaties executed by the United States and Great Britain which provided certain extraterritorial rights for military and civilian personnel involved in the missile program. While stationed down range petitioners lived off the base in facilities furnished by themselves. Held, that during the taxable year involved petitioners were not bona fide residents of a foreign country or countries within the meaning of section 91(a)(1), I.R.C. 1954, and are not entitled to exclude from gross income amounts received in those years for services performed at the down range missile site. Commissioner v. Matthew, 335 F. 2d 231 (C.A. 5, 1964), and Garvis O. Boyd, 46 T.C. 252 (1966), followed. Anthony Nahacky, pro se, 2811 N. Babcock St., Melbourne, Fla. Vernon J. Owens, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in the income tax of petitioners for the taxable year 1958 in the amount *135 of $1,863.08. The sole issue to be decided is whether respondent has erred in including in the gross income of petitioners $12,104.17 received by them as salary during their employment for a period including one full year on the island of Trinidad, West Indies. Findings of Fact This case has been presented under Rule 30 of the Court upon a complete stipulation of facts. The facts as stipulated are found and adopted as our findings of fact and the exhibits attached to the stipulation are included herein by reference. The petitioners, Anthony and Helen V. Nahacky, are husband and wife who reside at Melbourne, Florida. For the taxable year ended December 31, 1958, petitioners filed a joint Federal income tax return with the district director of internal revenue for the district of Jacksonville, Florida. Respondent in the statutory notice of deficiency issued to the petitioners on June 2, 1965, disallowed a claimed exclusion from income of wages received during 1958 in the amount of $12,104.17. They received gross income in that amount during the taxable year ended December 31, 1958. It is stipulated that petitioners do not qualify for the exclusion of income under section 911(a)(2) of the Internal Revenue Code *136 of 1954 inasmuch as they were not present in a foreign country for 510 full days within any period of 18 consecutive months. On September 16, 1957, petitioner Anthony Nahacky (hereinafter sometimes referred to as Nahacky) was transferred by his employer, Pan American World Airways, Inc. (hereinafter sometimes referred to as Pan American), to Trinidad, West Indies. Sometime subsequent to that date his wife and family moved to Trinidad. While in Trinidad petitioners leased their house in Melbourne, Florida, to a tenant. They rented the houses in which they lived while in Trinidad. These houses were located at One Rosalino Street in Port of Spain and Six Dickson Avenue in Diego Martin, both in Trinidad. They shipped their personal clothing, considerable furnishings, and automobile to Trinidad when assigned there. Their children attended school on a United States Naval Base, and petitioners paid the necessary tuition and transportation incident to such school. While in Trinidad, the petitioners lived off the local economy. On January 26, 1959, petitioners returned to the United States. In Trinidad, Nahacky was employed as a supply supervisor and his wife as a production typist *137 with the Marine Department of Pan American's Guided Missiles Range Division. The gross income of $12,104.17 received by petitioners in 1958 was received as salary or compensation of both of them from Pan American in connection with their employment on Trinidad in the "down range" guided missile program. Such employment was pursuant to Contract No. AF 08(606)-1156 entered between the United States of America and Pan American World Airways, Inc., on July 1, 1956. The purpose of the down range missile site was primarily for logistic support of several ocean-range vessels used in conjunction with the Missile Test Range of the Air Force's Missile Test Center (hereinafter sometimes referred to as the Down Range Missile Project). Petitioners during the taxable year 1958 were employed by Pan American and assigned to the Marine Base in Trinidad as employees engaged in the fulfillment by Pan American of its duties and responsibilities under the contract referred to above. On March 27, 1941, an Agreement (hereinafter sometimes referred to as the Agreement) between the United Kingdom of Great Britain and Northern Ireland, in consultation with the Government of Newfoundland, and the United *138 States of America was entered. It provided for the lease of certain naval and air bases on various territories (hereinafter sometimes referred to as Leased Areas), including Trinidad, West Indies, to the United States. This Agreement and the accompanying lease of Trinidad were to be effective for 99 years. They embodied the primary agreement governing the use by the United States, its contractors, agents and their employees on Trinidad in the pursuit of the "down range" guided missile space program. The presence of petitioners on Trinidad was pursuant to the contract between the United States and Pan American mentioned above which, in turn, was based upon the Agreement of March 27, 1941. The Agreement providing for the lease of the Leased Areas in Trinidad provided, inter alia: that the United States would have all the rights, power, and authority necessary for the establishment, use, operation, and defense of those areas, in addition to the territorial waters and air spaces adjacent thereto. Those rights, power, and authority included the right, power and authority to construct, use, occupy, and control the bases in the Leased Areas, in addition to regulate and control all communications *139 within, to, and from the areas. The rights, power, and authority of the United States to so act with regard to the Leased Areas were not limited to a particular purpose. The authority was sufficiently broad to, and in fact did, include the right of the United States to use the Leased Areas for logistic support of oceanrange vessels used in conjunction with the United States' long range guided missile program. The Agreement further provided that - On the signing of this Agreement, leases of the Leased Areas, substantially in the forms respectively set out in Annex II hereto, shall be forthwith executed, and all rights, power, authority and control under such leases and under this Agreement (including transfer of possession where it shall not previously have been transferred) shall thereupon become effective immediately, and pending execution of such Leases they may be exercised ad interim and possession of the Leased Areas shall be immediately given so far as the location thereof is then ascertained. * * * The Agreement further provided that - During the continuance of any Lease, no laws of the Territory which would derogate from or prejudice any of the rights conferred on the *140 United States by the Lease or by this Agreement shall be applicable within the Leased Area, save with the concurrence of the United States. The Agreement further provided that - The immigration laws of the Territory shall not operate or apply so as to prevent admission into the Territory, for the purposes of this Agreement, of any member of the United States forces posted to a Leased Area or any person * * * employed by, or under a contract with, the Government of the United States in connection with the construction, maintenance, operation or defence of the Bases of the Territory; * * * The Agreement further provided that - No member of the United States forces or national of the United States, serving or employed in the Territory in connection with the construction, maintenance, operation or defence of the Bases, and residing in the Territory by reason only of such employment, or his wife, or minor children * * * would be liable to the Government of Trinidad for income tax (except in respect of income derived from Trinidad), poll tax or similar tax on his person, import, excise, consumption, or other tax, duties or imposts of Trinidad with respect to personal belongings imported *141 by citizens of the United States or purchased by them at Post Exchanges or Commissary Stores in the Leased Areas. The exemption from taxation privileges was also extended under the terms of the Agreement to the contractors and subcontractors of the Government of the United States of America and included specifically any - income tax * * * in respect of any profits derived under a contract made in the United States with the Government of the United States in connection with the construction, maintenance, operation or defence of the Bases, or any tax in the nature of a licence in respect of any service or work for the United States in connection with the construction, maintenance, operation or defence of the Bases. Article VI of the Agreement, entitled "Arrest and Service of Process," provided, in part, as follows: 1. No arrest shall be made and no process, civil or criminal, shall be served within any Leased Area except with the permission of the Commanding Officer in charge of the United States forces in such Leased Area; * * * Article IV of the Agreement, entitled "Jurisdiction," further provided, in part, as follows: 1. In any case in which - a. a member of the United *142 States forces, a national of the United States or a person who is not a British subject shall be charged with having committed, either within or without the Leased Areas, an offence of a military nature, punishable under the law of the United States, including, but not restricted to, treason, an offence relating to sabotage or espionage, or any other offence relating to the security and protection of United States naval and air Bases, establishments, equipment or other property or to operations of the Government of the United States in the Territory; or b. a British subject shall be charged with having committed any such offence within a Leased Area and shall be apprehended therein; or c. a person other than a British subject shall be charged with having committed an offence of any other nature within a Leased Area, the United States shall have the absolute right in the first instance to assume and exercise jurisdiction with respect to such offence. 2. If the United States shall elect not to assume and exercise such jurisdiction the United States Authorities shall, where such offence is punishable in virtue of legislation enacted pursuant to Article V or otherwise under the law *143 of the Territory, so inform the Government of the Territory and shall, if it shall be agreed between the Government of the Territory and the United States Authorities that the alleged offender should be brought to trial, surrender him to the appropriate authority in the Territory for that purpose. 3. If a British subject shall be charged with having committed within a Leased Area an offence of the nature described in paragraph (1)(a) of this Article, and shall not be apprehended therein, he shall, if in the Territory outside the Leased Areas, be brought to trial before the courts of the Territory; or, if the offence is not punishable under the law of the Territory, he shall, on the request of the United States Authorities, be apprehended and surrendered to the United States Authorities, and the United States shall have the right to exercise jurisdiction with respect to the alleged offense. 4. When the United States exercises jurisdiction under this Article and the person charged is a British subject, he shall be tried by a United States court sitting in a Leased Area in the Territory. 5. Nothing in this Agreement shall be construed to affect, prejudice or restrict the full exercise *144 at all times of jurisdiction and control by the United States in matters of discipline and internal administration over members of the United States forces, as conferred by the law of the United States and any regulations made thereunder. Petitioners were not bona fide residents of Trinidad, West Indies, during any of the taxable year 1958 within the meaning of section 911(a)(1) of the 1954 Code. Opinion The petitioners contend that, unlike the taxpayers in Commissioner v. Matthew, 335 F. 2d 231 (C.A. 5, 1964), reversing 38 T.C. 417 (1962), certiorari denied 380 U.S. 943 (1965), and Garvis O. Boyd, 46 T.C. 252 (1966), they are entitled to exclusion from income of their earnings in Trinidad because, although present there for the same reason and under virtually identical international treaties as the taxpayers in those cases, they resided off the Leased Area and on the economy of the island. We think their premise is fundamentally unsound. Wherever they had their home on Trinidad, they could not acquire residence there within the meaning of section 911(a)(1) of the 1954 Code [1] because of the reasons set forth in those cases. *145 We think they are controlling of the issue here raised and find for respondent on the reasoning thereof. Decision will be entered for the respondent. Footnotes
1. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule. - The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona Fide Resident of Foreign Country. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income (as defined in subsection (b)) attributable to such period; but such individual shall not be allowed as a deduction from his gross income any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this paragraph.↩